So we'll turn to the calendared appeals, United States v. Jones. Good morning, your honors. May it please the court, my name is Brittany Paz, I represent Mr. Jones along with Attorney Pattis. I did reserve three minutes for rebuttal and we did request that Attorney Pattis be able to handle the rebuttal. Thank you so much. I would like to start with the first issue. We did brief five issues and I'm sure I won't get to all of them, but I'd like to start with the first issue, which is namely the application of the automobile exception to the warrant requirement to the Dodge Magnum that was parked in a rear lot that is very akin to a backyard without a warrant. So you want an exception to the exception? I don't believe it's an exception to the exception and the reason is because this is a very relevant issue as far as the applicability of the automobile exception to a car that is parked in a private driveway. So there is currently a pending cert in the Supreme Court, I believe it's Collins v. Virginia, that's currently pending cert on the issue of whether a police officer can walk onto property in a private driveway without a warrant and search a car. There's also this circuit split that I noted in my brief about whether given the heightened or potentially heightened expectation of privacy in your private driveway, whether some sort of exigency is required before you can just search a car. So the automobile exception itself is specifically related to the inherent mobility of the car. Is the case that's before the Supreme Court the precise issue here? I think it's slightly different. Because I thought here the question was, it was parked there, but I didn't know that there was a question of the police unlawfully being in the presence of the car. This is a little bit tricky of how the timeline works out. So at some point, the police do obtain a warrant to search the second and third floor apartments, which we also challenge. Prior to obtaining that warrant, the vehicle was being towed out of the property. Then Detective Campbell halts said tow and makes that tow operator put it back where he found it. So in essence, the car is not free to leave and it's under seizure at that point. So at that point, though, that the car was stopped, the police did not yet have a warrant to be on the property. So they are on the property trying to gain access in other ways to the second and third floor apartments, which we do also challenge in the second part of our argument. If they'd allowed the tow truck to come in and move the car a block away, then you wouldn't have this issue. So basically what your honor is suggesting then is that because it was removed and placed into a place that he had expectation of privacy, I perhaps wouldn't have that argument because it wasn't in the- Or the argument could be that he lost his expectation of privacy when he asked to have it towed. And then through no efforts of his part, it was not towed. But anyway, so I, but you say there's a Supreme Court case that might shed some light on this. Right, so, well, it's currently pending cert, so I don't know if it's- Pending cert. Pending cert. It's not, it hasn't been granted. It hasn't been granted yet. Oh, I see. Collins v. Virginia. It's been pending cert. Collins. C-O-L-L-S. Yes. So that's in 16-1027 is the docket number. I believe it's been pending cert since April, so I- Which circuit is that from, do you know? From Virginia. Virginia. From the state of Virginia? Fourth circuit. From the state of Virginia. From the state court, right. State court. Right, state court. So, and the reason why we challenge this, the application of the automobile exception, and also the district court had some difficulty with the automobile exception, is the lack of any particularized suspicion relating to this car in particular. So the only thing the government really cites to in relationship to this car, is that they had seen him driving it on one prior occasion a very short distance. They had been monitoring him on the day in question, namely- I'm sorry, correct me if I'm wrong. I hope I'm thinking about the same case. Did some officers see contraband through the window? Okay, so I'm talking about before that. So earlier in the day, they had been surveilling his home, and they did see him enter into the vehicle with no bags or anything like that. He drived a short period, a short distance to this house at 232 Westland. They watched him drive up the driveway and park in the rear of the building, which is not viewable from the street. So then later on, after they have the access to the warrant, but after the car already had been seized because Detective Campbell had stopped the tow truck operator from removing the car. He purports to look into the car through the tents, through a bag, through another bag, and allegedly see this lawman ammunition. And I do challenge that in the brief about the district court's decision. Yes. Let me ask you about the expectation of privacy. As I understand the driveway, it was a common space among residents of the building. Right, so it's- All right, our precedent has not recognized an expectation of privacy in such spaces. What's your argument there? So the argument is that the driveway is a shared driveway for this, I believe, the one building and the building next to it. And then also- It's not just the tenants of one building, it's shared among more than one building. Right, so in my brief, what I do is I liken the lot, the rear lot, to a backyard. And that is exactly what it is in the sense that you cannot see it- So with our decision in United States v Holland holding that there's no legitimate expectation of privacy in the common area of a two family house. Well, with respect, I don't think that the driveway can be considered a common area. I think that that's specifically related to the hallways of the house. Do you think there's more of an expectation of privacy in a driveway that's servicing two buildings than in a hallway right outside your apartment? I think that there is an enhanced expectation of privacy when you have a lot that is hidden from the outside world and the person has demonstrated subjectively an expectation of privacy in parking. I'm asking for you because we said there that we've not required the common areas to be accessible to the public at large. I think in my brief what I cite- So what's the support for viewing this kind of a commonly accessible driveway, common in that it's accessible to multiple residents here of two buildings. What's the case support for viewing that as an area where your client has an expectation of privacy? So in my brief, I cite to a Fifth Circuit decision in Fixal, and I believe I cite to another case, also I believe Fifth Circuit, which talks about how these types of areas, not necessarily the driveway, because keep in mind, we're talking about the lot that's behind the house. So the driveway leads to this lot, which is not viewable from the outside.  Right, but one of the distinctions in Fixal is that the backyard area was not open to businessmen or others who could approach the tenants in the course of their trade. That's exactly not the case here. I would disagree. So it doesn't seem to fit within- I would disagree. Fixal's concern. I mean, that was the backyard of a multi-family house. That's not the driveway that you would use here to- There was a front door to the house. I think Fixal's main point of contention was that if you're a salesman and you wanted to access the tenants in the house, you would go up potentially to the driveway and up to the front door. This driveway goes up through the driveway up to the back of the house to a back door. That back door is not accessible to the public at large. It is only accessible to the tenants. Right, but you have a lot of problems here. It's a 40 year old case, and this circuit has in the interim held to the contrary. Well, I think that the issue about the privacy expectations in a driveway is something that is, and of multi-family houses, is something that is current in the sense that there are other district courts around the country that are holding that these people who live in these more modern forms with multi-family houses are also entitled to expectations of privacy. And I did cite to our state court decision in Connecticut, Kono, just to give an example of that. All right, we're going to hear from your adversary, and then I know that Mr. Patas will rebut. Thank you, Your Honor. Thank you. Good morning, Your Honors. Jeff Stone on behalf of the government at Poli. May it please the court. The suppression ruling and the judgment of conviction by the district court both should be affirmed. First, addressing the suppression ruling. With regards to the seizure of evidence from the Dodge Magnum, the district court properly ruled that that evidence should not be suppressed, that that evidence is properly admissible in the trial before the jury. Here we have a case where- That's a conclusion, and we've just heard from your adversary why it shouldn't be. I mean, there was a lot done here without warrants. And if there'd only been warrants obtained, we wouldn't have these issues at all. And it seems to me there was time for warrants here, so what was going on is a little perplexing. That's correct, Your Honor. And should this situation arise in the future, I would advise the officers to obtain a warrant, to seek and obtain a warrant in that scenario with regards to the Dodge Magnum. But again, why- And the initial entry into the home. The initial entry was also warrantless. The initial entry was before the agents obtained a warrant. Yes, Your Honor. So, go back to the car. Why here, if they didn't get a warrant, why is there an expectation of privacy, under the circumstances? I mean, if the car was in a backyard, and, you know, I mean, granted there was multiple access to it, but your adversary's saying that, at least in this circuit, we haven't expressly held it in those circumstances, there's no expectation of privacy. We have held it in the common area of the building. Your Honor, the government would submit that there's no reasonable expectation of privacy, because the car was parked in a common driveway, a driveway that was common to not only the multiple tenants at 232-234 Westland Street, but also the multiple tenant units at the nearby or the next door multi-tenant unit building, which shared a common driveway and had a common kind of parking area in the back. Moreover, we have in this case a scenario where the defendant demonstrated diminished expectation of privacy when he contacted a tow operator to try to get his vehicle towed or removed from 232 Westland Street to a garage or a commercial facility. And the only reason the vehicle was not removed was because the officer stopped the tow truck operator from driving away with the car and instructed him to put it back in the rear of the common parking area at 232-234 Westland Street. Moreover, we have a scenario here where the officers were properly on the premises, executing a search warrant on the premises, and this car was parked within feet of the rear entrance, which had a- So by that time, they had the warrant for the house. That's- When they searched the cars, that's what the sequence of events was? That's correct, Your Honor, yes. They had searched the premises at the third floor and the second floor of 232 Westland Street. And they had completed that search, but still had not vacated the premises. They were processing evidence when the officers came down, Detective Campbell, from the second floor. He exited the rear entrance, which was a common stairwell that went to- Remind me what was in the car that was the evidence that was in the car, the ammo, right? There was ammo in the back. That's correct, Your Honor. So Detective Campbell testified that when he looked into the rear of this hatchback vehicle, he saw inside a bag a box that he recognized to be lawman ammunition, which he explained had- Was that the only evidence in the car? No, Your Honor. From the car, the officers seized approximately 600 grams of cocaine, slightly under a kilogram of crack cocaine, three firearms that had magazines that were fully loaded with ammunition, as well as large amounts of additional ammunition and other- He had evidence that was on his person at one point, didn't he? Or was that in the car? I guess that was in the car. That was in the car, Your Honor. Was money in the car? On that day earlier, there were two associates, Madeline Rivera and Charles Tyson, who went to 232 Westland Street. When they drove away, they were the subject of a motor vehicle stop. During the course of that motor vehicle stop, approximately 56 grams of crack was seized from the rear of their vehicle. They both were arrested. Post Miranda made statements to law enforcement, specifically Charles Tyson's- That's what led to the warrant, the affidavit. That's correct, Your Honor. That was a significant portion of the affidavit in support of the warrant for, among other searches, the search of the second and third floor apartments at 232 Westland Street. With regards to the search of 232 Westland Street, in addition to the consent, which the district court did not decide on, the government submits that the evidence demonstrates that there was a basis for the initial entry into 232 Westland Street based on a protective suite. But even setting that aside, the district court properly found that when you take that one statement out of the affidavit, and essentially it's a single statement in paragraph 16 of the affidavit regarding observing a money counter in the second floor apartment. When you remove that statement, the district court properly found that there still is ample probable cause to support the search warrant for both the second floor and the third floor at 232 Westland Street. And this is based on not only the information obtained at the inception of the investigation, the information from the Crime Stopper reports and their surveillance at the Evergreen residence and the stop of Mr. Upshaw. But specifically the events of December 18th, 2012. The observations that day, the seizure of crack from the Green Infinity, the post arrest statements of Charles Tyson and his associate, as well as the actions of Mr. Jones, acting nervous in the presence of Detective Campbell. Looking back and forth at the Dodge Magnum, providing seemingly false information regarding Madeline Rivera and Janisha Neely, trying to get a tow to tow the truck away, excuse me, the Dodge Magnum away from 232 Westland Street. Calling someone else to pick him up, to leave that area with a substantial amount of cash on this person. All of that taken together, the district court properly concluded that there was ample probable cause, even without that one statement, to justify the warrants to search 232 Westland Street, both the second and third floor. With regards to the final three issues that are raised by the defense in connection with this appeal, unless the court has questions for the government on those issues, government will respectfully rest on its papers. In conclusion, the government submits that in this case, the suppression ruling was proper, was legally sound and appropriate. And the judgment of the district court was also an appropriate, legally sound judgment and should be affirmed. Thank you. Mr. Patterson. Thank you, Judge. Norm Patterson, rebuttal, and I know I have brief time. With respect to the Rivera issue, the government relies on its brief. I will rebut that argument as follows. This Rivera evidence was particularly damning in this case because of what was lacking in the government's case in chief. Notwithstanding the length of the investigation, there was no evidence of hand-to-hand sales, no CI, no confession, no surveillance video. Basically, it was this highly unusual SWAT-like raid at multiple people on the morning of the 18th. What did Rivera provide the case? She provided the missing link, and she provided it on a basis that was particularly prejudicial. Uncharged, that could have been charged, misconduct of prior drug dealings, described with great particularity. And in our brief, we laid out in several pages what she said. Why was that particularly prejudicial in this case? Look at the testimony of Special Agent Zuck. Zuck is the agent who was not involved in the case and gave a generalized description of narcotics activity. He didn't meet Rivera, he didn't review her statement, he didn't conduct the investigation here. But what she said matched what he said would go on. To the extent that the government relied on its brief, I believe I'm- I mean, the point of oral argument is you make an argument, the government counters it, and you rebut. You're making an argument that is from the brief. Fair enough, then I'll move on to- No, no, I mean, you could use your time as you want. I just wanted to make sure I understood what you were doing here. Okay, go ahead, please. I didn't mean to interrupt. I'm glad you did, because if I'm losing you, I've lost one-third of the battle. With respect to what's been argued here in court, I would refer you to our appendix at page A53 on the question of the particularized suspicion to go into the apartment. The government contends at some point that there was justification in the form of a protective sweep. The argument seems to be that they had information somebody might have been in the apartment who was notified of law enforcement activities and their- The significance of the protective sweep is that the money counter was found, and if that's excluded, you still have a problem. Because there's probable cause for the warrant, independently of the- It's not sure, I'm not sure what that particularized suspicion is. Mr. Jones had five prior arrests. Is he supposed to look happy to be in the presence of a law enforcement officer? Let's assume that the warrantless entry into the house was improper. How does that further your case? Because ultimately, the search warrant was obtained based upon probable cause, independently of anything that was found. I think the claim is that it, I don't think it was. Our view was there was never particularized suspicion as to the house. All the factors that Mr. Stone recited in his argument are sufficiently vague as to not be particularized. You've got a man arrested five times before who looks nervous when the police stop him. Well, okay, I think he realizes trouble is coming. I'm talking about probable cause for the warrant. There was probable cause for the warrant independently of the improper initial entry into the house. Only by bootstrapping other perhaps potentially improper seizures. And so the question is particularized suspicion has to mean something other than mere speculation or what transpired so quickly that morning. And our view is that if the Fourth Amendment became a- Was based upon other people who were arrested and what they had on them and surveillance. Of that day. Of that day? Of that particular day. Of that particular day. They had no evidence other than the statement of one person arrested that there was narcotics at the house that day. The car, for example, sat unobserved in the back where others who had narcotics on them had access to the car. People were found with crack on them after they'd been in the house, after they'd been there. People were found with crack on them after they'd been to the house and had access to the car where crack was found. And that car was unobserved for several hours. This is probable cause. This isn't proof beyond a reasonable doubt. At some point, will the court say to an officer submitting a warrant, probable cause is something more than mere suspicion? Probable cause, if it's going to have any teeth in the Fourth Amendment, is going to mean something. An eyewitness told them that there are drugs in the premises. That's much more than mere suspicion under the precedent, and you know that, counsel. And the eyewitness said he purchased it, what was it, the second or the third floor? Which floor was it? Because my very first criminal case involved the suppression of a case where police went to the wrong floor. That wasn't particularized enough. You've got people referring to the third floor, now they're going into the second. That's where the scale was found. Particularized means particularized. Except that that was where he lived. Who lived? And it's, that was a residence, the second floor. And it's not uncommon for people to keep contraband in their residences. I mean, you know. It's not, but you have to, it's not uncommon, but that generalization is not particularized suspicion of a discrete locality. The discrete locality was the third floor, not the second. I realize it may seem like an insignificant point in hindsight, but you have to evaluate the case as it unfolds and consider the values that the Fourth Amendment is intended to protect. Mr. Jones. How are you going to get around Leon even if we accept that argument that you've just advanced? I mean, this is a signed warrant. We take the view that the district court erred in considering the scale and the warrantless seizure of some other items in this, and that there was not particularized suspicion. Thank you. Thank you. All right, we're going to take the matter under advisement. We thank you very much for your arguments.